## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

JAMES L. WALKER,
                Appellant,

      v.

DEPARTMENT OF THE NAVY,
                Agency.

DOCKET NUMBER
SF-1221-18-0510-W-1

DATE: May 21, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>James L. Walker</u>, Helendale, California, pro se.

<u>Robert Aghassi</u> and <u>Veronica Hale</u>, Barstow, California, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction based on the administrative judge's finding that the appellant elected to grieve the personnel actions at issue. After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under 5 C.F.R. § 1201.115 for granting the petition for review and therefore we DENY it.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Because there is some uncertainty regarding the correctness of the administrative judge's election of remedies finding, we VACATE the initial decision and instead DISMISS the appellant's appeal for lack of jurisdiction on the grounds that he failed to nonfrivolously allege that he made a protected disclosure or engaged in a protected activity that was a contributing factor in either of the personnel actions at issue.

## BACKGROUND

The appellant is employed by the agency as a WG-09 Painter. Initial Appeal File (IAF), Tab 12 at 56. In an October 4, 2017 notice, the agency suspended him for 14 days, effective October 10, 2017. *Id*. at 11-12. That month, the appellant filed three complaints or grievances regarding his suspension. First, on October 6, 2017, the appellant filed a complaint with the Office of Special Counsel (OSC). IAF, Tab 13 at 74-82. Second, on October 16, 2017, the appellant filed a complaint with the Federal Labor Relations Authority (FLRA). IAF, Tab 5 at 7, Tab 8 at 5. And third, on October 26, 2017, the appellant filed a grievance under the agency's negotiated grievance procedure. IAF, Tab 12 at 32-36.

On December 19 2017, the agency proposed to suspend the appellant for misconduct allegedly committed in November 2017. *Id*. at 64-65. Eight days later, on December 27, 2017, the appellant filed a formal equal employment opportunity (EEO) complaint. IAF, Tab 11 at 13-15. The agency ultimately suspended the appellant, again for 14 days, effective February 19, 2018. IAF, Tab 12 at 57.

In a statement to the FLRA dated January 28, 2018, which the appellant submitted to the administrative judge as part of his jurisdictional response, the appellant wrote that OSC had dismissed his complaint. IAF, Tab 5 at 6. The appellant then filed another complaint with OSC on February 28, 2018. IAF, Tab 4 at 5. In that complaint, he indicated that both the October 2017 suspension

and the February 2018 suspension were taken in reprisal for his protected disclosures or activities implicating the official who issued the October 2017 suspension (hereinafter "the first deciding official") in wrongdoing when the official instructed agency employees to perform work that should have been performed by contractors. *Id*. at 7-9. The appellant also indicated to OSC that he was retaliated against because of complaints he filed, as well as affidavits and testimony he submitted, critical of the first deciding official. *Id*. at 9.

On April 26, 2018, OSC terminated its investigation into the appellant's February 2018 complaint and informed him of his right to seek corrective action with the Board. IAF, Tab 4 at 1-2. OSC found that, because the appellant had apparently elected to file grievances regarding his suspensions, it had no basis for inquiring into the matter. *Id*. at 2.

The appellant filed this IRA appeal on May 7, 2018. IAF, Tab 1. With his initial appeal, the appellant included OSC's April 26, 2018 letters closing its investigation and summarizing the complaint. *Id*. at 7, 12. The appellant made no reference to the complaint he filed with OSC in October 2017. IAF, Tab 1. He checked the box indicating that he was appealing a suspension of more than 14 days and included the proposal and decision notices and the Standard Forms (SF) 50 for both suspensions. *Id*. at 4, 8-11, 16-18, 21-22. The appellant acknowledged that on October 26, 2017, he had filed a grievance regarding the suspension he was appealing. *Id*. at 5.

The administrative judge informed the appellant of his burden to establish the Board's jurisdiction over the IRA appeal and ordered him to submit a statement identifying, inter alia, his protected disclosures and activities and why he believed they were a contributing factor in the agency actions taken against him. IAF, Tab 3 at 2-8. The appellant made multiple filings in response to the administrative judge's order, submitting documents related to his grievance, EEO and FLRA complaints, and correspondence with a Member of Congress.[2] IAF,

---

[2] The appellant's filings contain numerous duplicate copies of documents.

Tabs 4-6, 8, 10-11, 13-18. He also submitted his October 2017 OSC complaint and his February 2018 OSC complaint, along with additional copies of OSC's April 26, 2018 letters regarding the February 2018 complaint. IAF, Tab 13 at 74-84. At no point did the appellant file a pleading compliant with the administrative judge's order to provide a narrative response or a statement as outlined by the administrative judge.[3]

In his initial decision, the administrative judge found that, although there was evidence in the record about the February 2018 suspension, the appellant only identified the October 2017 suspension as the personnel action at issue in this IRA appeal. IAF, Tab 20, Initial Decision (ID) at 8. He concluded that the undisputed record reflected that the appellant elected to grieve his October 2017 suspension and that the appellant therefore failed to nonfrivolously allege Board jurisdiction over this IRA appeal. ID at 8-9.

On petition for review, the appellant does not contest the administrative judge's jurisdiction finding and submits a number of documents. Petition for Review (PFR) File, Tab 3. The agency has filed a response opposing the petition, and the appellant has filed a reply. PFR File, Tabs 5, 7.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board has jurisdiction over an IRA appeal if an appellant exhausts his administrative remedies before OSC and makes nonfrivolous allegations that (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by

[3] The agency submitted its file to the Board on May 31, 2018. IAF, Tab 12. On June 3, 2018, the appellant submitted another complaint with OSC, vaguely alleging that the agency was being deceitful in its filing with the Board. IAF, Tab 14 at 5-13. He also noted that he had made a disclosure to a member of Congress on September 1, 2015. *Id.* at 9. The June 2018 OSC complaint and the 2015 disclosure are not at issue in this appeal.

5 U.S.C. § 2302(a). *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 12 (2016). However, under certain circumstances, when an appellant makes a binding election to grieve a personnel action pursuant to the provisions of a negotiated grievance procedure before he files a complaint with OSC about that personnel action, the Board will lack jurisdiction to consider an IRA appeal concerning that personnel action. *See* 5 U.S.C. § 7121(g); *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 14 (2013).

Here, the administrative judge found that the Board lacked jurisdiction over this IRA appeal because the appellant had first elected to grieve his suspension. ID at 8-9. As discussed below, we find that this appeal should be dismissed for lack of jurisdiction on other grounds. We therefore need not address the election of remedies issue and what effect the appellant's decision to file his first complaint with OSC on October 6, 2017 (prior to challenging the suspension in any other fora) has on the administrative judge's jurisdictional finding. *See Weslowski v. Department of the Army*, 80 M.S.P.R. 585, ¶ 14 n.1 (finding that the Board need not address whether it lacked jurisdiction over an appeal due to an election of remedies issue when it lacked jurisdiction over the appeal on other grounds), *aff'd*, 217 F.3d 854 (Fed. Cir. 1999) (Table). Accordingly, we vacate the initial decision.

<u>The appellant exhausted his administrative remedies regarding his claims that he was suspended in October 2017 and in February 2018 because he made a disclosure concerning the first deciding official, filed a complaint with the FLRA, and filed an EEO complaint.</u>

The Board, in *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 10-11, clarified the substantive requirements of exhaustion. The requirements are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. The Board's jurisdiction is limited to those issues that were previously raised with OSC. However, appellants may give a more detailed account of their whistleblowing activities before the Board than they did to OSC. *Id.* Appellants may demonstrate exhaustion through their initial OSC complaint;

evidence that they amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations; and, their written responses to OSC referencing the amended allegations. *Id.* Appellants also may establish exhaustion through other sufficiently reliable evidence, such as an affidavit or a declaration attesting that they raised with OSC the substance of the facts in the Board appeal. *Id.*[4]

When, as in this case, an appellant has filed multiple complaints with OSC, exhaustion may only be demonstrated through the complaint that led to the filing of the IRA appeal before the Board. *See Becker v. Department of Veterans Affairs*, 76 M.S.P.R. 292, 298 n.3 (1997). The Board will not consider any matters raised in other OSC complaints, unless they were also raised in the OSC complaint that led to the IRA appeal before it. *Id*.

Here, the record contains evidence of three complaints the appellant filed with OSC. IAF, Tab 4 at 5-11, Tab 13 at 74-82, Tab 14 at 5-13. It was the second of these complaints, filed in February 2018, that led to the filing of this IRA appeal. IAF, Tab 1 at 7, 12-13. Accordingly, in determining whether the appellant exhausted his administrative remedies with OSC prior to filing this IRA appeal, we will only review the appellant's February 2018 OSC complaint, *see Becker*, 76 M.S.P.R. 292, 298 n.3, along with any correspondence between the appellant and OSC pertaining to that complaint, *see Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011).

In his February 2018 OSC complaint, the appellant raised two personnel actions—the October 2017 suspension and the February 2018 suspension. IAF, Tab 4 at 9. He indicated that these actions were taken in reprisal for his reporting that the first deciding official instructed agency employees to perform work that

---

[4] The Whistleblower Protection Enhancement Act (WPEA), which went into effect on December 27, 2012, does not affect the relevant holding in this cited authority, nor does it affect the relevant holdings in the other authorities cited herein that were issued prior to the effective date of the WPEA. See Pub. L. No. 112-199, 126 Stat. 1465 (2012). Additionally, all of the relevant events in this appeal occurred after the December 27, 2012 effective date of the WPEA. Therefore, we have applied the WPEA to this appeal.

should have been performed by contractors and for a complaint he filed with the FLRA.[5]  *Id.* at 8-9.  The appellant also indicated that he had filed an EEO complaint on December 27, 2017.[6]  *Id*. at 6.  Thus, based on the appellant's OSC complaint, we find that he exhausted these claims with OSC.

In the analysis of the appellant's reprisal claims that follows, we first find that the appellant failed to nonfrivolously allege that his report about the first deciding official instructing employees to perform work that should have been performed by contractors constitutes a protected disclosure.  We then find that the appellant failed to nonfrivolously allege that his EEO complaint constituted a protected activity.  Finally, we find that, while the appellant nonfrivolously alleged that his complaint with the FLRA was protected, he failed to nonfrivolously allege that the protected activity was a contributing factor toward either of the two suspensions raised by the appellant.

---

[5] In his OSC complaint, the appellant indicated that he filed a complaint with the FLRA on February 19, 2018.  IAF, Tab 4 at 6.  The record contains a FLRA complaint form, which the appellant signed on October 16, 2017.  IAF, Tab 8 at 5.  In a January 28, 2018 statement in support of his FLRA complaint, the appellant stated that he filed that complaint on October 16, 2017.  IAF, Tab 5 at 7.  Other than the statement in the February 2018 OSC complaint, there is no evidence in the record supporting a conclusion that the appellant filed a complaint with the FLRA other than on October 16, 2017.  To the extent that the appellant was referring to another complaint he filed with the FLRA, he has failed to nonfrivolously allege that his filing of the complaint was a protected activity because there is no indication in the record, or allegation by him, that it concerned remedying reprisal for whistleblowing.  *See Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 39 n.8 (2016).

[6] The appellant additionally indicated that he filed some type of complaint or grievance on November 16, 2017.  IAF, Tab 4 at 9.  However, there is no other indication in the record regarding any complaint or grievance being filed on this date.  Similarly, although the appellant referenced appealing his discrimination complaint to the Equal Employment Opportunity Commission on February 16, 2018, *id*. at 6, there is no other evidence or allegation about such an appeal in the record.

<u>The appellant failed to nonfrivolously allege that he made a protected disclosure regarding agency employees performing work that should have been done by contractors.</u>

After determining which claims the appellant exhausted with OSC, we must consider whether the appellant has nonfrivolously alleged that he made a protected disclosure or engaged in protected activity. *See Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 5 (2014). A nonfrivolous allegation of a protected disclosure is an allegation of fact that, if proven, would show that the appellant disclosed a matter that a reasonable person in his position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Salerno*, 123 M.S.P.R. 230, ¶ 6. The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id.* The disclosure must be specific and detailed, not vague allegations of wrongdoing. *Id.*

Additionally, to make a protected disclosure of a violation of law, rule, or regulation, an individual ordinarily must identify the specific law, rule, or regulation that was violated. *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 24 (2015). However, an employee need not identify a statutory or regulatory provision by a particular title or number "when the employee's statements and the circumstances surrounding the making of those statements clearly implicate an identifiable violation of law, rule, or regulation." *Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001).

Here, the agency proposed the appellant's second suspension (which was effected in February 2018), in part, because on November 16, 2017, he engaged in

inappropriate behavior by raising his voice and becoming irate when telling a Contracting Officer, among others, that illegal aliens were performing painting work on the base. IAF, Tab 12 at 57, 64-67, 70. However, the appellant asserted that he never made assertions of illegal aliens working on the base. IAF, Tab 5 at 28. Instead, the appellant indicated that on November 16, 2017, he was investigating whether an order he was given—regarding striping lines on pavement and painting a building—would be in violation of a law, rule, or regulation, because that "use[d] to be a contractor function and may still be." IAF, Tab 5 at 27. The appellant stated that around noon that day he told the official who proposed the February 2018 suspension (hereinafter, "the second proposing official") that he was going to a particular part of the base "for investigative reasons."[7] *Id*. He also asserted that the second suspension was taken in reprisal for his whistleblowing disclosure about the striping and painting work. *Id*. at 12-13, 27.

Although the appellant indicated that he investigated whether the order regarding painting was in violation of a law, rule, or regulation, *id*. at 27, he has not identified any provision that a reasonable person in his position might have believed the agency violated. Nor do his allegations clearly implicate an identifiable violation of law, rule, or regulation. Accordingly, we find that the appellant failed to nonfrivolously allege that he made a protected disclosure evidencing a violation of law, rule, or regulation. *See Ayers*, 123 M.S.P.R. 11, ¶ 24. We further find that the appellant has failed to nonfrivolously allege that he disclosed a matter that a reasonable person in his position would believe evidenced gross mismanagement, a gross waste of funds, an abuse of authority, or

---

[7] The second proposing official stated that the appellant told him he was going to that particular part of the base for an appointment, which the second proposing official assumed concerned his grievance or EEO activity. IAF, Tab 12 at 72. The record is unclear as to whom the appellant alleges he made his disclosure, or what, precisely, he said when he made the disclosure.

a substantial and specific danger to public health or safety. *See Salerno*, 123 M.S.P.R. 230, ¶¶ 5-6.

<u>The appellant failed to nonfrivolously allege that his filing of an EEO complaint was protected activity under 5 U.S.C. § 2302(b)(9)(A)(i).</u>

Under 5 U.S.C. § 2302(b)(9)(A), it is a protected activity to exercise "any appeal, complaint, or grievance right granted by any law, rule, or regulation—(i) with regard to remedying a violation of [5 U.S.C. § 2302(b)(8)]; or (ii) other than with regard to remedying a violation of [5 U.S.C. § 2302(b)(8)]." However, of the two provisions, an employee or applicant for employment may seek corrective action from the Board only for protected activity under 5 U.S.C. § 2302(b)(9)(A)(i). 5 U.S.C. § 1221(a); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013). In other words, the appellant may seek corrective action from the Board for reprisal for filing an EEO complaint only if the EEO complaint itself was seeking to remedy a violation of 5 U.S.C. 2302(b)(8).

In his OSC complaint, the appellant indicates that he filed an EEO complaint on December 27, 2017. IAF, Tab 4 at 6. The record contains a copy of the agency's notice to the appellant acknowledging the complaint, but that notice does not indicate what the complaint pertained to. IAF, Tab 11 at 13-15. The EEO complaint itself is not in the record, and the appellant has failed to specify what he stated in the complaint.[8] Accordingly, we find that the appellant has failed to nonfrivolously allege that his filing of the EEO complaint sought to remedy a violation of 5 U.S.C. § 2302(b)(8), and therefore it does not constitute protected activity under 5 U.S.C. § 2302(b)(9)(A)(i).

---

[8] In a May 15, 2018 filing with the Board, the appellant provided two affidavits apparently filed in his EEO complaint earlier that month. IAF, Tab 5 at 10-14, 25-30. Among other things, he indicated that he was retaliated against for his whistleblowing disclosures against the proposing official in his second suspension. However, the affidavits do not explain whether the appellant asserted in his December 27, 2017 EEO complaint or any time prior to May 2018 that he was retaliated against for making a protected disclosure. *Id*. at 10-14, 25-30.

<u>The appellant nonfrivolously alleged that he engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i) by filing a complaint with the FLRA.</u>

In the complaint he filed with the FLRA, the appellant alleged that the first deciding official violated "multiple laws," as well as "base order 12750," and engaged in prohibited personnel practices and reprisal. IAF, Tab 8 at 5. He cites to 5 U.S.C. § 2302 in apparent support of his claim. *Id.* In a January 28, 2018 statement in the FLRA case, the appellant further explained, among other things, that the first deciding official violated the Federal statute dealing with unfair labor practices by disciplining him because he gave information about an assault and battery charge that he filed after an incident with a coworker at work. IAF, Tab 5 at 4.

Thus, the appellant's complaint with the FLRA included a claim that in reprisal for his disclosures about the workplace assault and battery the agency disciplined him. Such an agency action would constitute a violation of 5 U.S.C. § 2302(b)(8), which prohibits reprisal for making disclosures about violations of law, which an assault and battery would clearly constitute. Therefore, we find that the appellant's complaint to the FLRA is covered by 5 U.S.C. § 2302(b)(9)(A)(i), and therefore he has nonfrivolously alleged that he engaged in a protected activity for which he may seek corrective action from the Board. *See Mudd*, 120 M.S.P.R. 365, ¶ 7. Nevertheless, for the reasons stated below, we still find that he failed to establish the Board's jurisdiction over the claim.

<u>The appellant has failed to nonfrivolously allege that the prosecution of his FLRA complaint was a contributing factor in the personnel actions at issue.</u>

The next jurisdictional inquiry is whether the appellant has nonfrivolously alleged that his protected disclosure or activity was a contributing factor in the agency's decision to take the personnel actions at issue. *Salerno*, 123 M.S.P.R. 230, ¶ 5; *Carney*, 121 M.S.P.R. 446, ¶ 7; *see* 5 U.S.C. §§ 1221(e)(1). A protected disclosure or activity is a contributing factor if it in any way affects an agency's

decision to take a personnel action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012).

One way to establish contributing factor is the so-called knowledge-timing test. *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd*, 353 F. App'x 435 (Fed. Cir. 2009). Under that test, an appellant can prove the contributing factor element through evidence showing that the official taking the personnel action knew of the protected disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Carney*, 121 M.S.P.R. 446, ¶ 7; *Wadhwa*, 110 M.S.P.R. 615, ¶ 12. An appellant may satisfy the knowledge prong of the knowledge-timing test by proving that the official taking the action had constructive knowledge of the protected disclosure or activity, even if the official lacked actual knowledge. *See Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014). An appellant may establish constructive knowledge by showing that an individual with actual knowledge of the disclosure or activity influenced the official accused of taking the retaliatory action. *Id.* An appellant may satisfy the timing prong of the knowledge-timing test by showing that the personnel action at issue occurred within 2 years of the protected disclosure or activity. *Salerno*, 123 M.S.P.R. 230, ¶ 14.

However, contributing factor cannot be established when a personnel action precedes an appellant's purported disclosure or protected activity. *See El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 10 (2015). Here, the appellant filed his FLRA complaint on October 16, 2017, and it therefore could not have contributed to the agency's decision on October 4, 2017, to suspend the appellant effective October 10, 2017.[9] IAF, Tab 8 at 5, Tab 12 at 11-16; *see El*, 123 M.S.P.R. 76, ¶ 10.

---

[9] Similarly, the appellant's purported disclosure in November 2017 and his filing of an EEO complaint in December 2017 could not have contributed to his first suspension in October 2017. IAF, Tab 5 at 27, Tab 11 at 13-15; *see El*, 123 M.S.P.R. 76, ¶ 10.

Furthermore, the appellant has failed to allege that anyone who was involved in suspending him in February 2018, such as the proposing or deciding officials, were aware—before that suspension was affected—that he had filed a complaint with the FLRA. In addition, the appellant has not alleged that an individual with knowledge of his FLRA complaint influenced the proposing or deciding officials. We will not infer knowledge of the appellant's protected activities to any agency official based only on a closeness in time between an activity and a personnel action that the appellant conclusory alleges was retaliatory. *See Kerrigan v. Merit Systems Protection Board*, 833 F.3d 1349, 1355 (Fed. Cir. 2016) (holding that, even at the jurisdictional phase where the employee's burden is significantly lower than at the merits stage, it is not appropriate to infer knowledge on the part of any agency officials based only on the closeness in timing and the appellant's conclusory allegation that their actions were done in retaliation). Accordingly, we conclude that the appellant failed, under the knowledge-timing test, to nonfrivolously allege that his FLRA complaint was a contributing factor to his February 2018 suspension. *Stiles v. Department of Homeland Security*, 116 M.S.P.R. 263, ¶ 23 (2011) (finding that the appellant failed to establish contributing factor through the knowledge-timing test where he failed to show that the any of the officials involved in his nonselection were aware of his protected disclosure).

The knowledge-timing test is not the only way for an appellant to satisfy the contributing factor element. 5 U.S.C. § 1221(e)(1); *Stiles*, 116 M.S.P.R. 263, ¶ 24. If the appellant fails to satisfy that test, we must consider other evidence, such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether those individuals had a desire or motive to retaliate against the appellant. *Id.*

As previously indicated, the agency suspended the appellant in February 2018 because in November 2017 he engaged in inappropriate behavior

by raising his voice and becoming irate when confronting a Contracting Officer about the individuals performing painting on the base. IAF, Tab 12 at 57, 64-67, 70. In support of its action, the agency's evidence includes the Contracting Officer's written statement to a police officer attesting to the appellant's behavior, as well as the police officer's report that other individuals also reported that they observed the incident. *Id*. at 67, 70-71. Thus, the strength of the agency's case vitiates against a finding of contributing factor. Furthermore, the appellant's FLRA complaint was not personally directed at the proposing or deciding officials of the appellant's February 2018 suspension, further supporting a finding of no contributing factor. IAF, Tab 5 at 4. Finally, the appellant has not identified a motive for the proposing and deciding officials in the second suspension to retaliate against him. Thus, accepting all of the appellant's nonfrivolous allegations as true, he has failed to establish that his FLRA complaint was a contributing factor in the agency's decision to suspend him in February 2018.

<u>The appellant has failed to establish any other basis for granting the petition for review.</u>

The appellant has attached a few documents on review, including OSC's April 26, 2018 close-out letters, the agency's first-step grievance decision, and SF-50s documenting his suspensions. PFR File, Tab 3 at 4-12. Only one of the documents attached on review—a copy of a September 10, 2017 email from the appellant to agency officials regarding his work leader allegedly pushing him— was not a part of the record below. *Id*. at 11. First, we note that evidence already in the record is not new. *Meier v. Department of the Interior*, 3 M.S.P.R. 247, 256 (1980). Second, the Board will normally only consider evidence submitted for the first time on review upon a showing that it was previously unavailable despite the petitioner's due diligence. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980); 5 C.F.R. § 1201.115(d). The appellant has not explained why he could not have submitted the September 10, 2017 email before

the administrative judge. In any event, the documents do not provide a basis for granting the petition for review because the appellant has not shown that they are of sufficient weight to warrant an outcome different from that of the initial decision. *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980).

Additionally, the appellant asserts on review that the agency is supporting its case against him with two "false" witnesses. PFR File, Tab 3 at 3. His allegation is immaterial to whether he has established the Board's jurisdiction over this IRA appeal. We also note that the appellant has referred to his two suspensions as being "back to back," IAF, Tab 4 at 8-9, and indicated in his initial appeal that he was challenging a suspension of more than 14 days, IAF, Tab 1 at 4. To the extent that the appellant argues that the Board should consolidate his two suspensions for jurisdictional purposes, we decline to do so because he has not shown that the suspensions were based on the same reason and that the agency attempted to circumvent Board jurisdiction by imposing multiple suspensions of 14 days or less. *See Palmer v. Department of Transportation*, 109 M.S.P.R. 438, ¶¶ 5-6 (2008). For the reasons stated above, we find that the appellant has failed to establish the Board's jurisdiction over this IRA appeal.

## NOTICE OF APPEAL RIGHTS[10]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions to provide a comprehensive summary of all available review options. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.   5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D),"then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:          _____

*Gina K. Grippando*
Gina K. Grippando
Clerk of the Board

Washington, D.C.